IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

   v.                                CRIMINAL NO. 2:21-CR-31
                                       (KLEEH)

JOSEPH WAYNE DADISMAN,

       Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]

Pending before the Court is a Report and Recommendation ("R&R") by United States Magistrate Judge Michael J. Aloi. The Magistrate Judge recommends that the Court deny the motion to suppress filed by Defendant Joseph Wayne Dadisman ("Dadisman"). For the reasons discussed below, the Court **ADOPTS** the R&R and **DENIES** the motion to suppress.

## I.  FACTS

The Court finds the following facts based on the testimony and arguments at the suppression hearing, all exhibits to the hearing, and the briefs filed by the parties. On June 29, 2021, Dadisman left his residence on a motorcycle. Sheriff Brett M. Carpenter ("Carpenter") with the Barbour County Sheriff's Department ("BCSD") observed Dadisman driving on Union Road in Philippi, West Virginia. Carpenter was on the phone with Deputy Shahan at the time and informed Shahan that Dadisman was a "big

USA V. DADISMAN                                          2:21-CR-31

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

player" in methamphetamine sales in the county. Carpenter noted that Dadisman was driving without an endorsement for his motorcycle license. Additionally, the license plate on the motorcycle was registered to a different type of motorcycle than the one being driven by Dadisman.

Carpenter followed Dadisman, who eventually entered the Shop and Save parking lot. Dadisman left the Shop and Save and began traveling on South Main Street. Dadisman then pulled off of the road and into the Rich Oil Co. gas station. Carpenter initiated the emergency lights on his vehicle and followed Dadisman into the gas station to conduct a traffic stop based on the improper vehicle registration.

As Dadisman dismounted his motorcycle, he noticed Carpenter, removed his helmet, and approached Carpenter. Carpenter conducted a pat-down of Dadisman and began to question him. Dadisman advised Carpenter that he had a firearm in a saddle bag on the motorcycle. Carpenter began to search the motorcycle for the firearm. When he struggled to locate the firearm, Dadisman assisted him and removed the firearm from the saddle bag. Carpenter secured the firearm by placing it in his police vehicle.[1]

---

[1] Carpenter testified that after this, he asked Dadisman if he had any methamphetamine on him, and Dadisman said that he had "a little bit of meth on him." Carpenter also testified that he asked Dadisman if he could search the motorcycle, and Dadisman consented. Dadisman testified that did say that he had "a little bit of meth on him," but not until after the canine arrived and

USA V. DADISMAN                                    2:21-CR-31

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]

Other deputies from the BCSD, including Shahan, soon arrived on scene. Dadisman engaged in conversation with Carpenter and Chief Deputy Roy. Carpenter asked Dadisman if he had any other weapons or methamphetamine in his possession, which he denied. Dadisman explained to the officers that he was on his way to visit family and expressed concerns about being late to see them.

Several minutes later, K-9 Handler Lt. Cale ("Cale") and his trained canine, Raptor, arrived on scene. Chief Walters of the Philippi Police Department had dispatched Cale to the scene after hearing about the traffic stop on the radio. Raptor performed an open-air sniff on the motorcycle and alerted on the rear saddle bag to the presence of controlled substances. Dadisman then walked over to the motorcycle, pulled out a bag of methamphetamine, and handed it to Carpenter. Dadisman was placed in handcuffs and arrested.

Based upon the discovery of the methamphetamine, law enforcement sought, obtained, and executed a search warrant for a search of Dadisman's home. In his home, officers found additional methamphetamine and firearms. The Grand Jury returned an Indictment against Dadisman on October 19, 2021, charging him with Possession with Intent to Distribute Methamphetamine, in violation

_____

alerted to the presence of controlled substances. As discussed herein, even without the statement or the consent, the officers' actions were lawful.

USA V. DADISMAN                                              2:21-CR-31

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

## II.   REPORT AND RECOMMENDATION

The R&R recommends that the Court deny the motion to suppress because the initial traffic stop was lawful, the initial search of the motorcycle was lawful, the delay and ensuing K-9 sniff were lawful, and the search of the motorcycle was lawful.  Based on all of this, the Magistrate Judge found that the subsequent search warrant was lawful as well.

The R&R advised the parties that they could file "specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection."  The R&R further stated that "[f]ailure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals."

## III. OBJECTIONS

Dadisman timely filed two objections to the R&R. Specifically, Dadisman objected to the following conclusions: (1) "that the officers were justified in performing a limited protective search of Dadisman's motorcycle to gain control of the weapon and secure the risk posed to officers"; and (2) "that the delay of approximately ten minutes, awaiting the arrival of the drug dog, was reasonable under the circumstances of the case."

USA V. DADISMAN                                              2:21-CR-31

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made.  28 U.S.C. § 636(b)(1)(C).  Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations" to which there are no objections.  Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)).  Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous.  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

Because no party has objected to the Magistrate Judge's findings regarding the remainder of the R&R, the Court is under no obligation to conduct a de novo review with respect to those portions.  Accordingly, the Court reviewed the remainder of the R&R for clear error.  Upon careful review, and finding no clear error, the Court adopts the portions of the R&R to which there was no objection.

## IV.  ANALYSIS

Dadisman objects to the R&R's findings relating to the protective search and the length of delay while waiting for the K-9's arrival.  Both objections lack merit.

USA V. DADISMAN                                                        2:21-CR-31

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

### A. The initial protective search of the motorcycle was lawful because Dadisman alerted police to the presence of a firearm.

In Terry v. Ohio, the Supreme Court held that during a traffic stop,[2] if an officer reasonably believes that an individual may be "armed and dangerous," the officer is entitled to frisk the individual for weapons. See Terry v. Ohio, 392 U.S. 1, 27 (1968). The Fourth Circuit has found that the terms are linked such that when a suspect is armed, there is no additional "dangerousness" requirement. See United States v. Robinson, 846 F.3d 694, 700 (4th Cir. 2017) (reasoning that a suspect is considered "armed and thus dangerous"). In other words, in the context of a traffic stop, to be armed is to be dangerous.

In Robinson, the defendant made the same argument that Dadisman makes here: that there was no evidence, aside from being armed, that he was dangerous. Id. at 695. The court rejected this argument, finding that the defendant's being armed was sufficient to support a protective frisk. Id. at 696 ("[A]n

---

[2] The Magistrate Judge found that the traffic stop itself was lawful, and the parties did not object to that finding. Dadisman's motorcycle displayed a license plate from another vehicle, which constitutes improper use of a registration plate under W. Va. Code § 17A-9-3 ("No person shall lend to another any . . . registration plate . . . issued to him if the person desiring to borrow the same would not be entitled to the use thereof, nor shall any person knowingly permit the use of . . . the same by one not entitled thereto, nor shall any person display upon a vehicle any . . . registration plates . . . not issued for such vehicle or not otherwise lawfully used thereon under this Traffic Code.").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

officer who makes a lawful traffic stop and who has a reasonable suspicion that one of the automobile's occupants is armed may frisk that individual for the officer's protection and the safety of everyone on the scene."). In reaching this conclusion, the court described the inherent risk in traffic stops:

> To be clear, the general risk that is inherent during a traffic stop does not, without more, justify a frisk of the automobile's occupants. But the risk inherent in all traffic stops is heightened exponentially when the person who has been stopped — a person whose propensities are unknown — is armed with a weapon that could unexpectedly and fatally be used against the officer in a matter of seconds.

Id. at 699 (quotation marks removed).

In Michigan v. Long, the Supreme Court found that the analysis set forth in Terry and its progeny extends to officers' ability to conduct a limited search of the suspect's vehicle if they believe a firearm is accessible. 463 U.S. 1032, 1033 (1983). The Court found that officers may carry out a protective search of the suspect's vehicle if they have a reasonable belief that the suspect is dangerous and may gain control of weapons in the vehicle:

> The protective search of the passenger compartment of respondent's car was reasonable under the principles articulated in Terry and other decisions of this Court. Although Terry involved the stop and subsequent patdown search for weapons of a person suspected of criminal activity, it did not restrict the preventive search to the person of the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**
**[ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

> detained suspect. Protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger. Roadside encounters between police and suspects are especially hazardous, and danger may arise from the possible presence of weapons in the area surrounding a suspect. Thus, the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. "Such a protective search is authorized even if the suspect is under police restraint at the time the search is conducted, because the suspect may be able to escape such restraint, or may later regain access to the vehicle if he is not arrested." United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007) (citing Long, 463 U.S. at 1051–52, and approving search of vehicle for weapon and ammunition during investigative stop).

Here, as the Magistrate Judge correctly pointed out, Dadisman disclosed to officers that he had a firearm in his motorcycle. While Robinson related to a protective frisk, not a protective search of a vehicle, its logic carries over: Dadisman was armed and, thus, dangerous. Even after Dadisman moved, at the most, ten feet away from the motorcycle, he was within distance of reaching

USA V. DADISMAN                                             2:21-CR-31

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

it, retrieving it, and using it against the officers.  The officers were justified in performing a limited protective search of the motorcycle to secure the weapon and eliminate the risk that it would be used against them.  No evidence of dangerousness in addition to the firearm was necessary to justify the protective sweep.  Dadisman's objection on this ground is overruled.

**B.   The delay while awaiting the canine's arrival was reasonable because it created minimal intrusion upon Dadisman.**

A drug canine's sniff of a vehicle does not require a warrant because it is not a "search" for purposes of the Fourth Amendment. See Illinois v. Caballes, 543 U.S. 405, 409 (2005).  When a trained narcotics dog "alerts" to the presence of drugs, this fact alone constitutes probable cause to search the vehicle to which the dog alerted.  See id. at 405–10; United States v. Jeffus, 22 F.3d 554, 556–57 (4th Cir. 1994).

Law enforcement officers may detain a vehicle while awaiting a drug canine's arrival and sniff, but the detention must be reasonable, with officers using "diligence in pursuing their investigation" and minimizing intrusion upon the suspect.  United States v. McBride, 676 F.3d 385, 395 (4th Cir. 2012) (finding a 55-minute detention of vehicle reasonable while waiting for a drug dog); see also United States v. White, 42 F.3d 457, 460 (8th Cir.

9

USA V. DADISMAN                                                    2:21-CR-31

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 43] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

1994) (finding an 80-minute wait for canine narcotics unit reasonable).

Here, Dadisman was detained for under ten minutes while law enforcement waited for the K-9 handler to arrive. The parties agree that Dadisman's motorcycle had improper license plates and that Dadisman could not have driven it away. The Court finds that under these circumstances, the period of delay was reasonable and was not violative of Dadisman's Fourth Amendment rights. Dadisman's objection on this ground is overruled.

## V.   CONCLUSION

For the reasons discussed above, the R&R is **ADOPTED** [ECF No. 43], Dadisman's objections are **OVERRULED** [ECF No. 44], and Dadisman's motion to suppress is **DENIED** [ECF No. 26].

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record and all appropriate agencies.

DATED: October 21, 2022

_Tom S Kleeh_
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA