IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  **v.**                                                                                           CRIMINAL NO. 2:21-CR-31
                                                                                                               (KLEEH)

**JOSEPH WAYNE DADISMAN,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING
COMPASSIONATE RELEASE MOTIONS [ECF NOS. 72, 80]**

Defendant Joseph Wayne Dadisman ("Dadisman") is incarcerated at FPC Morgantown with a projected release date of April 29, 2030. Pending before the Court are two motions relating to Dadisman's request for compassionate release. For the reasons discussed herein, the Court **DENIES** the motions.

        **I.**    <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

On October 19, 2021, the grand jury returned a one-count indictment charging Dadisman with Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Pursuant to a written plea agreement, Dadisman pleaded guilty to the charge. On November 3, 2022, the Court sentenced him to 136 months' incarceration, to be followed by 5 years' supervised release.

On May 7, 2024, Dadisman filed a <u>pro</u> <u>se</u> motion for compassionate release so that he can care for his ailing mother.

**MEMORANDUM OPINION AND ORDER DENYING**
**COMPASSIONATE RELEASE MOTIONS [ECF NOS. 72, 80]**

The motion is fully briefed. On July 8, 2024, Dadisman filed an additional motion asking the Court to grant his motion for compassionate release.

## II. DISCUSSION

The district court is authorized to reduce a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Upon receiving a motion for compassionate release, the district court

> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Id. Prior to the First Step Act of 2018 (the "First Step Act"), "district courts could only reduce a term of imprisonment under § 3582(c)(1)(A) 'upon motion of the Director of the Bureau of Prisons.'" United States v. Kibble, 992 F.3d 326, 329-30 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). In the First Step Act, Congress allowed federal inmates to file motions for compassionate release directly with the district court after they have exhausted their administrative remedies.[1] See Pub. L. No.

---

[1] A defendant filing a motion for compassionate release must have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring

**MEMORANDUM OPINION AND ORDER DENYING**
**COMPASSIONATE RELEASE MOTIONS [ECF NOS. 72, 80]**

115-391, § 603(b), 132 Stat. 5194, 5239 (2018). Dadisman filed a pro se motion. The BOP has not filed a motion on his behalf. For the reasons discussed herein, the Court finds that extraordinary and compelling circumstances do not exist, and even if they did, the § 3553(a) factors weigh against Dadisman's release.

### A.   Extraordinary and Compelling Circumstances

In Dadisman's motion, he states that he needs to care for his mother who is incapacitated due to medical conditions. He states that her medical condition has deteriorated to the point where she can no longer care for herself, and he is the only remaining family member who is "willing or able" to provide for her. Dadisman states that he has a release plan, including housing, and the financial means to care for his mother upon release. He writes that he is not a danger to the safety of any other person and the community. In response, the Government asserts that Dadisman has not met his burden to show that he is the only family member able to take care of his mother. The Government points out that Dadisman's daughter spoke at his sentencing hearing, and he has a

---

a motion on the defendant's behalf," or there must be a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).  The exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." United States v. Muhammad, 16 F.4th 126, 129-30 (4th Cir. 2021) (citation omitted) (finding the district court in error by sua sponte dismissing a motion for compassionate release based on the threshold requirement). The Government has not raised the issue of exhaustion, so the Court will not address it.

brother who lives nearby.

In 2023, the United States Sentencing Commission amended its policy statement to apply to defendant-filed motions and expanded the list of circumstances sufficient to support such a motion. See U.S.S.G. § 1B1.13. The amendments, which became effective on November 1, 2023, supersede much of the case law that developed over the last several years while there was no policy statement applicable to defendant-filed motions, but the amended Sentencing Guidelines consider that case law. The enumerated circumstances set forth in the Sentencing Guidelines relate to medical circumstances of the defendant, the age of the defendant, family circumstances of the defendant, whether the defendant is a victim of abuse while in custody, and the imposition of an unusually long sentence. See id.

Here, Dadisman focuses on one argument warranting his compassionate release: the need to care for his ailing mother. The Sentencing Guidelines provide that extraordinary and compelling circumstances exist with respect to "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." Id. § 1B1.13(b)(3)(C).

In line with the Government's argument, the Court is not convinced that Dadisman is the "only available caregiver" for his

**MEMORANDUM OPINION AND ORDER DENYING**
**COMPASSIONATE RELEASE MOTIONS [ECF NOS. 72, 80]**

mother. Dadisman's daughter spoke at his sentencing hearing, and his brother lives in Barbour County, where Dadisman's mother lives. See PSR, ECF No. 57, at ¶ 68. While Dadisman's motion mentions that his brother and mother have not spoken to one another in over four years, the motion also mentions an aunt and, generally, his mother's siblings. Based on the record before the Court, Dadisman has not shown that he is the only available caregiver for his mother. The Court finds that he has not established an extraordinary and compelling reason for release.

    **B.    Sentencing Factors Under 18 U.S.C. § 3553(a)**

Even if extraordinary and compelling circumstances existed, the 18 U.S.C. § 3553(a) sentencing factors weigh against Dadisman's release. See United States v. Centeno-Morales, 90 F.4th 274, 280 (4th Cir. 2024) ("After a district court finds that an 'extraordinary and compelling' reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors."). Under 18 U.S.C. § 3553(a), the Court must impose a sentence "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. The relevant considerations include the nature and circumstances of the offense and the defendant's history and characteristics. The Court also considers whether the sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, deters criminal

conduct, protects the public from future crimes of the defendant, and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The Court further considers the kinds of sentences available, the applicable sentencing guideline range, any pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted sentence disparities, and the need to provide restitution to victims.

After reviewing the sentencing factors under 18 U.S.C. § 3553(a), the Court finds that they do not support a reduction of Dadisman's sentence to time served. As discussed above, Dadisman was convicted of Possession with Intent to Distribute Methamphetamine. The offense conduct in this case involved a traffic stop and search of Dadisman's motorcycle, which yielded 494 grams of 93% pure methamphetamine and a pistol. See PSR, ECF No. 57, at ¶ 31. Law enforcement then obtained a warrant to search Dadisman's residence, and officers seized 1,800 grams of 98% pure methamphetamine, 11.59 grams of 99% pure methamphetamine, 11.305 grams of 94% pure methamphetamine, $1,537.88 in United States currency, sandwich bags, digital scales, and firearms. See id. at ¶¶ 32, 35. The total drug weight attributable to Dadisman was 2,316.89 grams of "Ice" methamphetamine. See id. at ¶ 36.

Dadisman filed certain documents that appear to detail

courses he has taken in custody, courses he plans to take, his disciplinary history, and his work assignments. See ECF No. 79. To the extent that Dadisman has made efforts to better himself while incarcerated, the Court commends him for his efforts. These efforts, however, do not outweigh the serious offense conduct in this case. Dadisman possessed with intent to distribute an enormous quantity of "Ice" methamphetamine (2,316.89 grams), which would have wreaked havoc on the community had it been distributed to methamphetamine users. During the sentencing hearing, the Government expressed that it believed the seizure to be the largest methamphetamine seizure in the history of the Elkins, West Virginia, point of holding court. The Government represents in its response (ECF No. 75) that the value of the methamphetamine was $300,000.00.

At sentencing, Dadisman's guideline range called for 168-210 months' incarceration. During the hearing, Dadisman spoke about his mother's cancer, her surgeries, his remorse, and his financial difficulties that led him to make poor decisions. The Court granted a motion for downward variance in part, sentencing Dadisman to 136 months' incarceration. In justifying the downward variance, the Court noted Dadisman's age, the amount of time in custody that he was facing, his lack of criminal history, and his personal characteristics, including his family issues.

**MEMORANDUM OPINION AND ORDER DENYING
COMPASSIONATE RELEASE MOTIONS [ECF NOS. 72, 80]**

The Court has considered all of the § 3553(a) factors here, and it believes that the current sentence continues to strike the appropriate balance. Even if all other factors weighed in favor of release, they are outweighed by the need for the sentence to reflect the seriousness of the offense conduct, promote respect for the law, provide just punishment for the offense, and deter criminal conduct. Dadisman's continued incarceration serves those purposes. The Court is sympathetic to Dadisman and his mother, but it believes that early release would not satisfy the purposes of sentencing, given the enormous and harmful nature of the offense conduct in this case.

### III. CONCLUSION

For the reasons discussed above, Dadisman has not established that extraordinary and compelling circumstances warrant his early release. Even if they did, the sentencing factors under 18 U.S.C. § 3553(a) weigh against Dadisman's release. For the reasons discussed above, Dadisman's pro se motions regarding compassionate release are **DENIED** [ECF Nos. 72, 80].

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record via email and to Dadisman via certified mail, return receipt requested.

**MEMORANDUM OPINION AND ORDER DENYING**
**COMPASSIONATE RELEASE MOTIONS [ECF NOS. 72, 80]**

DATED: October 17, 2024

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA